UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRY D. GREGORY, JR.,            :     CIVIL NO: 1:20-cv-00006
                                  :
              Plaintiff,          :     (Magistrate Judge Schwab)
                                  :
         v.                       :
                                  :
ANDREW SAUL,                      :
Commissioner of Social Security,  :
                                  :
              Defendant.          :

## MEMORANDUM OPINION

### I.  Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The plaintiff, Terry D. Gregory, Jr. ("Gregory"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Social Security Disability ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision will be affirmed.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 10-1* to *10-20*.[1]  Gregory protectively filed[2] applications for SSD benefits on June 20, 2016, and for SSI benefits on June 22, 2016, contending that he became disabled on February 28, 2012. *Admin. Tr.* at 112.  After the Commissioner denied both of Gregory's claims at the initial level of administrative review, Gregory requested an administrative hearing. *Id.*  On September 6, 2018, with the assistance of counsel, he testified at a hearing before Administrative Law Judge ("ALJ") Michelle Wolfe. *Id.* at 283-324.

The ALJ determined that Gregory was not disabled since February 28, 2012, for the purposes of SSD or SSI and so denied Gregory benefits. *Id.* at 130. Gregory appealed the ALJ's decision to the Appeals Council, which denied his request for review on September 3, 2019. *Id.* at 93-96.  Gregory submitted new evidence, prompting the Appeals Council to set aside its September 3, 2019, decision to consider that evidence. *Id.* at 86-89.  The Appeals Council then again

---

[1]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Gregory's claims.

[2]  "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

denied Gregory's request for review on November 14, 2019. *Id.* at 86. Gregory

once again submitted new evidence, prompting the Appeals Council to set aside its

November 14, 2019, decision to consider that evidence. *Id.* at 1-4. The Appeals

Council denied Gregory's request for review for the third time on January 8, 2020.

*Id.* at 1. This makes the ALJ's decision the final decision of the Commissioner

subject to judicial review by this court. *See id.* at 109-134 (ALJ's decision).

On January 3, 2020, Gregory began this action by filing a complaint

claiming that the Commissioner's decision is not supported by substantial evidence

and contains errors of law. *Doc. 1* at 3-5. He requests that the court reverse the

Commissioner's decision and find him disabled as of February 28, 2012, or, in the

alternative, remand the case to the Commissioner for a new hearing. *Id*. at 5.

After the Commissioner filed an answer and a certified transcript of the

administrative proceedings (*docs. 9, 10*) the parties consented to proceed before a

magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the

undersigned. *Doc. 14*. The parties then filed briefs, and this matter is ripe for

decision. *Docs. 15, 16*.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Gregory was disabled, but whether substantial evidence supports the Commissioner's finding that he was not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under the Social Security Act by reason of disability under Title II or Title XVI, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

5

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[3]  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

In determining whether the claimant is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

---

[3]  "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Gregory met the insured-status requirements through December 31, 2017. *Admin. Tr.* at 112.

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying Gregory's Claim.

On September 6, 2018, the ALJ denied Gregory's claim for benefits. *Admin. Tr.* at 109.  Before applying the sequential-evaluation process, the ALJ addressed Gregory's earnings record and found "sufficient quarters of coverage to remain insured through December 31, 2017." *Id.* at 112.  The ALJ then proceeded to apply the sequential-evaluation process, and he determined that Gregory has not been

disabled within the meaning of the Social Security Act since February 28, 2012. *Id.* at 112-134.

At step one of the sequential-evaluation process, the ALJ found that Gregory had worked after his alleged onset date of February 28, 2012, but that his earnings from such work "did not rise to the level of substantial gainful activity." *Id.* at 114.

At step two of the sequential-evaluation process, the ALJ found that Gregory had the following severe impairments: carpal tunnel syndrome, degenerative disc disease, osteoarthritis of the bilateral thumbs post left thumb arthroplasty, adjustment disorder, right knee meniscal tear post arthroscopic medial meniscectomy and shaving, and Crohn's disease post bowel resection. *Id.* at 114-15.  The ALJ also found a multitude of non-severe impairments from which a "review of the record indicates some treatment or mention" but which "either did not persist for 12 months or did not cause more than a minimal effect on [Gregory's] ability to work." *Id.* at 115.

At step three of the sequential-evaluation process, the ALJ found that Gregory did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 115-19.  More specifically, the ALJ discussed Listings 1.02, 1.04, 5.06, and 12.04 and determined that Gregory did not meet any of those listings. *Id.*

The ALJ assessed Gregory's RFC.  In making this RFC assessment, the ALJ reviewed Gregory's assertions regarding his limitations, his treatment records as a whole, and the opinions of Drs. Ross and Long and Ms. Santucci. *Id*. at 119-128. The ALJ found that Gregory's medically determinable impairments reasonably could be expected to cause his alleged symptoms. *Id.* at 121.  But he found that Gregory's statements regarding the "intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." *Id.*

The ALJ further reviewed the opinion evidence in the record. *Id*. at 127-28. The ALJ gave some weight to the opinion of Dr. Ross, who reviewed the record for the State agency, and who opined that Gregory "had no severe mental impairment." *Id.* at 127.  Nevertheless, the ALJ concluded that Gregory's adjustment disorder was a severe impairment and reduced his RFC accordingly. *Id.* The ALJ reasoned that Gregory began more regular mental health treatment in August 2016 and also testified to receiving medication from his primary care doctor to accompany that therapy. *Id.*

The ALJ asserted that he gave little weight to the opinion of Ms. Santucci, who "indicated [Gregory] regularly attended counseling and . . . was diagnosed with adjustment disorder with mixed anxiety and depressed mood." *Id.* at 128.  She also "commented that his gastrointestinal problems significantly diminished his

quality of life . . . [and] that his physical and emotional consequences required extensive treatment on a daily basis and that his long-term prognosis was poor." *Id.* As to Ms. Santucci's opinion, the ALJ explained that she assigned little weight because:

> Ms. Santucci appeared to be considering [Gregory's] physical and emotional issues even though she was not a medical provider for his Crohn's disease. Her opinion does not offer much probative value since she failed to give functional limitations. Also, absent from the record were any contemporaneous treatment notes regarding [Gregory's] therapy to support her opinion.

*Id.* The ALJ also assigned little weight to the discharge summaries from Gregory's emergency room visits regarding his back and abdominal pain because the visits were for acute pain, the "providers did not have more than a passing treating relationship to [Gregory,] . . . [and] they offer little probative value, as they do not give functional limitations." *Id.*

Finally, the ALJ considered Dr. Long's recommendations to avoid strenuous activity following surgery in November 2017, and gave great weight to Dr. Long's January 2018 opinion "when he released [Gregory] to full activities and to eat whatever he wanted." *Id.* The ALJ reasoned that Dr. Long is a specialist treating physician for Gregory and "his opinion is supported by treatment notes." *Id.* But the ALJ concluded that Dr. Long's opinion "is primarily for [Gregory's] gastrointestinal issues, and thus, the records reviewed for all his impairments combined supports the limitations herein the RFC." *Id.*

The ALJ found that Gregory had the RFC to perform light work[4] with the following limitations:

> Occasional crawling, balancing, stooping, crouching, and climbing ramps and stairs with no climbing of ladders, ropes or scaffolds or kneeling or crawling.  He was limited to frequent handling and grasping for gross manipulation with the left non-dominant upper extremity and must avoid concentrated exposure to temperature extremes of cold and heat, humidity, and hazards including moving machinery and unprotected heights.  [Gregory] can do simple, routine tasks but no complex tasks.

*Id.* at 119.

At step four of the sequential-evaluation process, the ALJ found that Gregory could not perform his past relevant work as a machine operator/packager, machine operator, laborer/landscaper, or in building maintenance. *Id*. at 128.

At step five of the sequential-evaluation process, considering Gregory's age, education, work experience, and RFC, as well as the testimony of a vocational

---

[4]  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

expert ("VE"),[5] the ALJ found that there were other jobs—such as bagger, office helper, and hand assembler—that exist in significant numbers in the national economy that Gregory could perform. *Id*. at 129.

In sum, the ALJ concluded that Gregory was not disabled since the alleged onset date of February 28, 2012. *Id*. at 130.

## V. Discussion.

Gregory lists two arguments but argues that the ALJ erred in five separate instances[6] because she (1) did not find several of Gregory's diagnoses as severe impairments at step two (*doc. 15* at 4-5); (2) did not find that Gregory met Listing 5.06 (*id.* at 5-8); (3) did not credit VE testimony regarding Gregory's hands (*id.* at 8); (4) assigned Ms. Santucci's testimony little weight (*id.* at 10); and (5) misapplied the Medical-Vocational Guideline (Grid) Rule 201.14 (*id.*). Because we find Gregory's arguments unavailing, we will affirm the decision of the Commissioner.

---

[5] The ALJ found that the VE's testimony was inconsistent with the Dictionary of Occupational Titles, but that a reasonable explanation for the inconsistency existed because the VE's testimony was only inconsistent "regarding limitations like time off task and the option to sit and stand" and "for those limitations [the VE] relied on her knowledge and experience." *Admin. Tr.* At 129-30.

[6] We note that, while Gregory merely mentions some of these allegations, the Commissioner separately addressed them as five distinct issues in his brief. *Compare doc. 15 with doc. 16.* We will address Gregory's arguments as five issues for the sake of clarity.

**A.  Substantial evidence supports the ALJ's step-two analysis.**

Gregory argues that the ALJ should have found his chronic hepatitis C, right shoulder injury, chronic kidney disease, generalized anxiety disorder, and depression as severe impairments at step two. *Doc. 15* at 4.  The Commissioner retorts that any error at step two was harmless because the ALJ found at least one severe impairment and proceeded to step three. *Doc. 16* at 16-17.  We agree with the Commissioner that substantial evidence supports the ALJ's step two finding.

At step two, the "severity inquiry is a *de minimis* screening device used to discard meritless claims." *Bonilla v. Saul*, No. 3:20-CV-00161, 2021 WL 735852, at *4 (M.D. Pa. Feb. 25, 2021) (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)).  "Because the ALJ found in [the claimant's] favor at Step Two, even if [s]he had erroneously concluded that some of [his] other impairments were non-severe, any error was harmless." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

Here, the ALJ found that Gregory suffers from six severe impairments and provided her reasoning for the determination that the remaining impairments are non-severe, after which the ALJ continued in her disability analysis. *Admin. Tr.* at 115.  Moreover, the ALJ considered the entire record, including all record evidence

and subjective complaints regarding all symptoms regardless of their severity, in

crafting the RFC, and she provided ample reasoning to support her findings. *Id.* at

119-28.  Thus, we find that the ALJ's step two determination is supported by

substantial evidence and that any error would be harmless because the ALJ

considered all of Gregory's evidence and symptoms, explained her reasoning, and

proceeded in her disability analysis. *Id.*; *see also Orr v. Comm'r Soc. Sec.*, 805 F.

App'x 85, 88 (3d Cir. 2020).

**B. Substantial evidence supports the ALJ's step-three analysis.**

Gregory argues, without providing us any citations to the record, that he

"has arguably a listing level impairment under 5.06(A) and/or 5.06(B)(3) and (5)"

regarding carpal tunnel syndrome[7] and "abdominal pain plus nausea." *Doc. 15* at

6-8.  The Commissioner argues that the ALJ appropriately determined that

Gregory did not met all of Listing 5.06's criteria or satisfy the medical equivalency

requirements of Listing 5.06. *Doc. 16* at 17-20.

In order to satisfy Listing 5.06(A), Gregory

would need to produce an obstruction of stenotic areas in either the
small intestine or colon which is confirmed by either medical imaging
or in surgery and requires hospitalization for either intestinal
decompression or surgery; moreover, obstruction of stenotic areas

---

[7] We note that Listing 5.06 deals with inflammatory bowel disease and
encompasses Crohn's disease. 20 C.F.R. Part. 404, Subpart. P, App. 1 § 5.06.  It
does not, however, deal with carpal tunnel syndrome, and the reason for Gregory's
mention of carpal tunnel syndrome in discussing Listing 5.06 is a mystery.

> must occur on a minimum of two occasions that are at least sixty days
> apart within six months.

*Nordone v. Comm'r of Soc. Sec.*, No. 20-4313, 2021 WL 753930, at *7 (D.N.J.

Feb. 26, 2021) (citing 20 C.F.R. Part 404, Subpart P, App. 1).  "[F]or a claimant to

show that his impairment matches a listing, it must meet *all* of the specified

criteria.  An impairment that manifests only some of those criteria, no matter how

severely, does not qualify." *O'Connor v. Comm'r Soc. Sec.*, 466 F. App'x 96, 101

(3d Cir. 2012) (emphasis in original) (quoting *Sullivan v. Zebley*, 493 U.S. 521,

530-31 (1990)).  As for satisfying Listing 5.06(B)(3) and (5), Gregory would need

to produce, "within the same consecutive 6-month period," both "[c]linically

documented tender abdominal mass palpable on physical examination with

abdominal pain or cramping that is not completely controlled by prescribed

narcotic medication, present on at least two evaluations at least 60 days apart" and

"[i]nvoluntary weight loss of at least 10 percent from baseline, as computed in

pounds, kilograms, or BMI, present on at least two evaluation at least 60 days

apart." 20 C.F.R. Part 404, Subpart P, App. 1 § 5.06(B)(3), (5).  And "to qualify

for benefits by showing that his unlisted impairment, or combination of

impairments, is 'equivalent' to a listed impairment, he must present medical

findings equal in severity to *all* the criteria for the one most similar listed

impairment." *Sullivan*, 493 U.S. at 531 (emphasis in original) (citing 20 C.F.R.

§ 416.926(a)).

In his brief, Gregory merely mentions two instances of abdominal pain which were three days apart, on January 16 and 19, 2018. *Admin. Tr.* at 806, 923; *doc. 15* at 7-8.  We further note that these medical records list dates after Gregory's date last insured of December 31, 2017. *See Manzo v. Sullivan*, 784 F. Supp. 1152, 1156 (D.N.J. 1991) ("Plaintiff must establish that she became disabled prior to the expiration of her insured status.") (citing *Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985)).  On its face, Gregory's argument fails to satisfy Listing 5.06(B)(3)'s requirement that uncontrolled pain "present on at least two evaluations at least 60 days apart." 20 C.F.R. Part 404, Subpart P, App. 1 § 5.06(B)(3).  Furthermore, Gregory fails to mention anything whatsoever regarding the weight loss required by Listing 5.06(B)(5), and both of these showings would be necessary.

The ALJ found that the "medical evidence of record fails to establish listing level inflammatory bowel disease." *Admin. Tr.* at 117.  The ALJ noted Gregory's emergency room visits and complaints of abdominal pain, as well as his laparoscopic ileocecectomy on November 20, 2017, but also found that "[s]ubsequent treatment records indicate [Gregory] was doing well, he denied pain, ate well, and moved his bowels regularly." *Id.*; *see also id.* at 994 (showing "Crohn's disease with stricture of terminal ileum" on imaging); *id.* at 996-997 (reporting laparoscopic ileocecectomy); *id.* at 982-83 ("Doing well, feeling back to

himself.  Denies pain, denies fevers/chills.  Eating well and moving bowels regularly, no blood in bowel movements . . . Can eat whatever he wants and return to full activities.").

As to Gregory's medical equivalency argument, he again fails to provide us with any citations to the record and argues that all of his severe and non-severe impairments combined are the medical equivalency for Listing 5.06 and that his complaints of abdominal pain on two separate occasions in 2018 meet the listing requirements. *Doc. 15* at 7-8.  The Commissioner responds that Gregory cannot satisfy the medical equivalent of Listing 5.06 by using the "overall functional impact of his unlisted impairment or combination of impairments" because "as a legal matter, a combination of impairments cannot be used to demonstrate medical equivalence." *Doc. 16* at 19-20 (citations omitted).

Based on our review of the record, the ALJ's determination regarding Gregory's failure to meet Listing 5.06 is supported by substantial evidence.  And because Gregory fails to carry "the burden of presenting 'medical findings equivalent in severity to all the criteria for the one most similar impairment'" to meet the medical equivalency of Listing 5.06, we will not disturb the ALJ's findings. *Sincavage v. Saul*, No. 1:19-CV-888, 2020 WL 2794608, at *12 (M.D. Pa. May 29, 2020) (citing *Sullivan*, 493 U.S. at 531).  Thus, the ALJ's step-three

determination that Gregory does not meet Listing 5.06 is supported by substantial evidence.

### C. The ALJ appropriately relied upon the VE's testimony.

Gregory argues that the ALJ did not properly consider the VE's testimony and claims that, according to the VE, Gregory's Crohn's disease requires 12 to 15 bathroom breaks daily which would "cause him to be disabled from all competitive employment," that Gregory could only use his hands less than occasionally, and that he "was unable to perform any work activities." *Doc. 15* at 8-9.  The Commissioner retorts that the ALJ "was not required to credit" portions of the VE's testimony because some portions were "premised on limitations that the ALJ did not ultimately adopt." *Doc. 16* at 20.

The ALJ asked the VE a hypothetical question: "if the individual would, for any reason, need additional breaks throughout the workday beyond normal breaks and as a result would be off task for more than 15 percent of the time on a consistent basis, would that have an effect on the jobs named?" *Admin. Tr.* at 322. The VE responded by testifying: "Yes, it would eliminate all jobs in the hypotheticals.  It would also eliminate any type of work existing in the economy, Your Honor." *Id.*  But this was an exchange based upon a hypothetical question, and the ALJ did not find that Gregory would be off task 15 percent of the time or require 12-15 bathroom breaks daily; instead, it was Gregory's own subjective

complaint that he used the bathroom "10-20 times a day depending upon what he ate and where he was located." *Id.* at 120.  Gregory also testified that one of the side effects of his medication was constipation. *Id.*  As to Gregory's carpal tunnel syndrome and thumb osteoarthritis, the ALJ conducted an extensive review of the medical record, noted Gregory's subjective complaints, and concluded that, even "[i]n the light most favorable to" Gregory, his "osteoarthritis of the thumbs and carpal tunnel syndrome [were] within the residual functional [capacity] even during periods [Gregory] was not actively treating it." *Id.* at 122-24 (reviewing records), 126 (ALJ's reasoning and conclusion).

The ALJ ultimately found that Gregory's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 121. Here, just as in *Craigie*, the VE's "opinion was based in part on symptoms described by" Gregory. *Craigie v. Bowen*, 835 F.2d 56, 57 (3d Cir. 1987). "Inasmuch as the [ALJ] did not have to accept [Gregory's] testimony, [s]he did not have to credit the [vocational] expert testimony that was predicated upon it." *Id.* at 58; *see also Kanakis v. Comm'r of Soc. Sec.*, 649 F. App'x 288, 292 (3d Cir. 2016) ("An ALJ need not accept the testimony of a [VE] unless it is based on a claimant's credibly established limitations.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (explaining that the ALJ need only submit to the VE

medically established impairments, not all those impairments alleged by a

claimant)).  Furthermore, the VE testified that jobs did exist in the national

economy using the limitations the ALJ ultimately applied to Gregory. *Admin. Tr.* at

318-19.  And as noted above, the ALJ conducted an extensive review of the

medical record and provided a reasonable analysis regarding Gregory's thumb

osteoarthritis, carpal tunnel syndrome, and Crohn's disease. *Id.* at 112-26.  Thus,

we find no error in the ALJ's use of and reliance on the VE's testimony.

### D. The ALJ's weight assignment to Ms. Santucci's opinion is supported by substantial evidence.

Gregory argues that the ALJ erred in her decision to give Ms. Santucci's

opinion little weight. *Doc. 15* at 10.  The Commissioner responds that the ALJ's

decision was supported by substantial evidence because therapists like Ms.

Santucci are not acceptable medical sources, her opinion was offered without any

contemporaneous treatment notes, and her opinion of Gregory's poor prognosis

was unsupported by and later contradicted by record medical evidence. *Doc. 16* at

23-25.

Under the rules applicable when Gregory filed for SSD and SSI in June of

2016, opinions from acceptable medical sources are "entitled to controlling

weight" and can be used as evidence to establish diagnoses or impairments;

conversely, therapists are "other sources" whose opinions may be considered by

the ALJ but lack the same weight entitlement. *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999); 20 C.F.R. §§ 404.1513, 416.913; *see also Pelton v. Comm'r of Soc. Sec*, No. 4:19-CV-1164, 2020 WL 2992041, at *5 (M.D. Pa. June 4, 2020) ("[Ms. Santucci's] opinion is not entitled to controlling weight, because [Ms. Santucci] is a therapist.  A therapist is not an acceptable medical source.  Opinions from non-acceptable medical sources are not entitled to controlling weight."). Nevertheless, the ALJ is required to provide her reasoning for the amount of weight she applies to a therapist's opinion, and "[w]here a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Pelton*, 2020 WL 2992041, at *5 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Here, contrary to Gregory's assertions otherwise, the ALJ reasoned that Ms. Santucci's opinion was entitled to little weight for three reasons.  First, Ms. Santucci "appeared to be considering [Gregory's] physical and emotional issues even though she was not a medical provider for his Crohn's disease." *Admin. Tr.* at 128.  Second, the ALJ reasoned that Ms. Santucci's "opinion does not offer much probative value since she failed to give functional limitations." *Id.*  Third, Ms. Santucci's opinion was not supported because "absent from the record were any contemporaneous treatment notes regarding [Gregory's] therapy" with her. *Id.*

Moreover, our review of the record indicates that Ms. Santucci's opinion is a mere paragraph rife with conclusory language but entirely lacking any analysis or explication. *Id.* at 471. And the record does not reflect any actual treatment notes from Ms. Santucci. *Id.* at 643-52. While we do not doubt Ms. Santucci's treatment of Gregory, we find that the ALJ's reasoning in assigning her opinion little is supported by substantial evidence.

### E. The ALJ did not misapply the medical-vocational guidelines (grids).

Gregory argues that grid rule 201.14 (regarding sedentary-work limitations) "would lead to a finding of disabled" if the RFC limited Gregory to sedentary work because he turned 50 on July 20, 2014,[8] the ALJ found that he was unable to perform past relevant work, and the ALJ "did not make a finding of transferrable skills." *Doc. 15* at 10; *see also* 20 C.F.R., Part 404, Subpart P., App. 2 § 201.14. The Commissioner responds that the ALJ "correctly applied grid rules 202.14 and 202.21 (regarding light-work limitations), which directed a finding of 'not disabled'" because the ALJ limited Gregory to light work—not sedentary work. *Doc. 16* at 26; *see also* 20 C.F.R., Part 404, Subpart P. App. 2 §§ 202.14, 202.21.

---

[8] Gregory's date of birth is July 20, 1964. *Admin. Tr.* at 128. He was 47 years old at his alleged onset date of February 28, 2012, and the ALJ found that he "subsequently changed age category to closely approaching advanced age" when she wrote her opinion on September 8, 2018. *Id.* at 128-29.

Here, Gregory inartfully attempts to argue, under the guise of a grid-rule argument, that the ALJ's RFC determination was inappropriate because she found Gregory to be limited to light work as opposed to sedentary work. *Admin. Tr.* at 119-28.  If, Gregory contends, the RFC limited him to sedentary work, then grid rule 201.14 would apply, which would require a determination of disabled.  But the ALJ determined that Gregory had the RFC to perform light work with additional restrictions. *Id.* at 119.  Because the ALJ found that Gregory had the RFC to perform light work, she applied grid rule 202.14 since the Table 2 grid rules deal with those who are "limited to light work." 20 C.F.R., Part 404, Subpart P. App. 2, Table No. 2.  Because we find none of Gregory's other arguments availing, and because our own review of the record does not compel us to find otherwise, we find that the ALJ's light-work RFC determination is supported by substantial evidence.  Accordingly, Gregory's grid-rule argument is without merit, and the ALJ did not misapply the grid rules.

## VI.  Conclusion.

For the foregoing reasons, on this **24th** day of **March, 2021**, the decision of the Commissioner will be affirmed.  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge